IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 28, 2017

## JOHN ASHLEY SNIDER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-16-131      Donald H. Allen, Judge**

_____

**No. W2017-00582-CCA-R3-PC**

_____

The Petitioner, John Ashley Snider, pleaded guilty to six drug-related charges in exchange for an effective sentence of ten years of Community Corrections, after the service of eleven months and twenty-nine days. At the time of the plea, he reserved a certified question for appeal regarding law enforcement officers' warrantless entry into his home and the seizure of his person. This court dismissed the appeal, holding that the certified question was not dispositive of the case. *State v. John Ashley Snider*, No. W2014-01848-CCA-R3-CD, 2015 WL 5014605, at *3-4 (Tenn. Crim. App., at Jackson, Aug. 25, 2015), *perm. app. denied* (Tenn. Dec. 14, 2015). The Petitioner filed a petition for post-conviction relief, alleging that he had received the ineffective assistance of counsel. The post-conviction court held a hearing, after which it denied the petition. On appeal, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which J. ROSS DYER, J. joined. THOMAS T. WOODALL, P.J., filed a concurring opinion.

Daniel J. Taylor, Jackson, Tennessee, for the appellant, John Ashley Snider.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Alfred Lynn Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts
### A. Guilty Plea Hearing

This case arises from the Petitioner's possession of controlled substances and drug paraphernalia. He entered a plea of guilty to three counts of possession of a controlled

substance with the intent to sell, one count of simple possession of a controlled substance, one count of possession of synthetic cannabinoid, and one count of possession of drug paraphernalia. *See* T.C.A. §§ 39-17-417 (Supp. 2012) (amended 2014) (possession of psilocybin, marijuana, diazepam, alprazolam with intent to sell), 39-17-418 (2010) (amended 2014) (simple possession of oxycodone), 39-17-425 (2014) (possession of drug paraphernalia), 39-17-438 (Supp.2012) (amended 2013, 2014, 2015) (possession of synthetic cannabinoids). The trial court sentenced the Petitioner to an effective ten years, ordered him to serve eleven months, twenty-nine days in confinement, and ordered him to serve the remainder on Community Corrections. At the time of the guilty plea hearing, the Petitioner reserved a certified question of law regarding the legality of the warrantless entry into the Petitioner's home and the seizure of the Petitioner from his doorway.

This Court summarized the facts relevant to the certified question as follows:

> This case relates to a "knock and talk" encounter at the [Petitioner's] home on January 9, 2013, and to the seizure of the [Petitioner] from his doorway by an officer. The [Petitioner] was detained and held in an officer's vehicle while a search warrant for his home was obtained. After the search warrant was executed, the [Petitioner] was arrested for multiple drug-related offenses. The [Petitioner] filed a motion to suppress the evidence obtained during the search, alleging that the search was tainted by the officer's prior unlawful warrantless entry into the [Petitioner's] home and by the unlawful detention of the [Petitioner].
>
> At the suppression hearing, Madison County Sheriff's Office Investigator Tikal Greer testified that on January 9, 2013, he and other officers went to the [Petitioner's] home after receiving two anonymous tips from Crime Stoppers that the [Petitioner] was growing marijuana. Officer Greer arrived at the [Petitioner's] home around 6:25 p.m. without a warrant to conduct a knock and talk.
>
> Officer Greer testified that he and another officer went to the front door and knocked several times. He heard music coming from inside the house. He said the [Petitioner] opened the door "[p]robably shoulder width." Officer Greer said that he immediately smelled the odor of marijuana once the door was opened. He said that he had worked in the narcotics division for five years and that he had smelled marijuana numerous times. The officers explained to the [Petitioner] why they were there, and the [Petitioner] told the officers that he would not consent to a search of his home. Officer Greer said they told the [Petitioner] that they were not asking for his consent to search his home. Officer Greer said that

2

the [Petitioner] attempted to close the door and that Officer Greer "got [the [Petitioner] out" and detained him to prevent the [Petitioner] from destroying the marijuana Officer Greer suspected was inside the home. Officer Greer left the scene to obtain a search warrant.

Officer Greer returned with the warrant and the home was searched. He said that officers found 6.2 pounds of marijuana and seventy-three jars of fermented psilocybin mushrooms. In four or five of the jars, the mushrooms were growing. The police also found equipment for cultivating marijuana and mushrooms, six ounces of "hashite," 2.5 ounces of synthetic cannabinoids, 169 pills of assorted controlled substances, and approximately $2000 in cash.

On cross-examination, Officer Greer testified that he received the first anonymous tip regarding the [Petitioner] around December 18, 2012. The officers began driving past the [Petitioner's] home twice daily and also conducted nighttime surveillance. Officer Greer said the surveillance was unproductive. He said that the officers discussed a "trash pull" but that they decided to conduct a knock and talk instead. The officers did not conduct regular surveillance between Christmas and New Year's.

Officer Greer testified that he received the second anonymous tip on January 3, 2013. Surveillance resumed, but no unlawful activity was observed. Officer Greer stated that he was not frustrated or irritated at the lack of suspicious activity at the [Petitioner's] home and agreed that he had no specific reason to conduct the knock and talk on January 3.

Officer Greer agreed that a weather report from the day of the search showed temperatures in the low 50's with rain and 5.8 to 6.9 m.p.h. wind speeds. He said he smelled the marijuana despite the weather.

Officer Greer testified that he knocked for two or three minutes before the [Petitioner] opened the door. Officer Greer agreed music was playing inside the home and said it was possible the [Petitioner] did not hear the initial knock.

Officer Greer testified that he placed his foot inside the front door to "grab" the [Petitioner] and to ensure the [Petitioner] did not close the door. He said the [Petitioner] was standing at the door. Officer Greer said that it took about two hours to obtain the search warrant and return and that the other officers reported no one entered or left the home while he obtained

3

the warrant.

Officer Greer testified that the raw marijuana he smelled initially was found in the [Petitioner's] bedroom, ten to fifteen feet from the front door. The [Petitioner's] bedroom door was open when officers entered. Marijuana was found in plastic containers, in jars, and loose on the bedroom dresser.

On redirect examination, Officer Greer testified that he was approximately two feet from the front door when the [Petitioner] opened it, that he leaned in closer to smell, and that the home smelled of raw marijuana.

The trial court denied the [Petitioner's] motion to suppress. The court reviewed the search warrant and credited Officer Greer's testimony. The court stated that an officer "has a right to detain someone who the officer believes is attempting to perhaps destroy evidence." The court found that Officer Greer's testimony supported a conclusion that the marijuana would have been destroyed if the [Petitioner] had closed the door. The court noted that the detention was brief and concluded that based on the totality of the circumstances, the officers did not violate the [Petitioner's] rights. The court stated that the officers had a right to approach the [Petitioner's] home. The court also stated,

> They approached the residence and smelled marijuana coming from inside . . . it would appear that there's quite a bit of carpeting . . . fabric and material of that nature would absorb the odor of marijuana and it would be apparent, so I credit the testimony when the officer said he could smell marijuana[.]

After the suppression hearing, the [Petitioner] pleaded guilty on all counts, and pursuant to his plea agreement reserved one certified question for appeal:

> Whether the warrantless entry and subsequent search of the [Petitioner's] home by officers . . . on or about January 9, 2013, violated the [Petitioner's] rights granted pursuant to the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 7, 8, and 9 of the Tennessee Constitution and whether any evidence obtained as

4

a result of said search should be suppressed as the fruits of an unconstitutional search in that:

> a. The original forcible entry and detention of the [Petitioner] was made without a warrant and without the consent of the [Petitioner],
>
> b. There were no exigent circumstances present to justify the original warrantless entry and search [the Court having found that exigent circumstances existed because of the strong odor of marijuana coming from inside the [Petitioner's] residence which was detected by the officers as they stood just outside the front door of the [Petitioner's residence], and
>
> c. The consensual nature of the knock and talk procedure was effectively nullified by the action of the officers, resulting in the [Petitioner's] unlawful detention and ultimate unlawful search [the Court having found that the [Petitioner] attempted to close the front door of his residence which caused the officers to enter the residence to prevent possible destruction of evidence of drug activity].

*Id.* at *1-3.

After summarizing the facts, this court noted that the trial court had confirmed the dispositive nature of the certified question both in an order and in the judgments. *Id.* at *3. It appeared to this court that the trial court and the parties had assumed that the initial entrance and seizure and detention of the Petitioner affected the validity of the search warrant. We held that, even if the investigator detained the Petitioner in a manner that exceeded constitutional limits, the search warrant remained valid. *Id.* We stated that the search warrant was based on the anonymous tips and the smell of marijuana, all of which were known before the officer placed his foot inside the residence and physically seized the Petitioner. A neutral and detached magistrate determined that the anonymous tips, as corroborated by Officer Greer's observations, gave rise to probable cause that the house contained marijuana. This court treats that determination with deference. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983); *State v. Jacumin*, 778 S.W.2d 430, 431 (Tenn. 1989). We further held that the police obtained no information or evidence to secure the warrant

as a result of seizing and detaining the Petitioner before execution of the search warrant. *Id.* Because the legality of the initial detention does not affect the admissibility of the evidence obtained pursuant to the search warrant, the certified question was not dispositive.

## B. Post-Conviction Facts

The Petitioner filed a petition for post-conviction relief in which he alleged that he had received the ineffective assistance of counsel because Counsel did not communicate with him and did not properly craft the certified question of law. He requested that the post-conviction court reverse his conviction and also grant him approximately $110,000 in damages (including emotional pain and suffering) based upon Counsel's representation. The State responded, positing that Counsel was not ineffective and that the petition did not satisfy all the statutory requirements. The post-conviction court found that the Petitioner had presented a colorable claim, and appointed the Petitioner counsel, who filed an amended petition. In the amended petition, the Petitioner asked that his guilty plea be set aside because he had only entered it upon the belief that he would be allowed to present the suppression issues to the appellate court.

The post-conviction court held a hearing during which the parties presented the following evidence: The Petitioner testified that law enforcement officers searched him on January 9, 2015, after which time he was arrested. The Petitioner said that he retained Davis Camp to represent him, and Mr. Camp filed a motion to suppress, which the trial court denied after a hearing. The Petitioner said that he was not totally satisfied with Mr. Camp, so he hired Counsel before the guilty plea. In accordance with Counsel's advice, he entered a guilty plea, reserving a certified question of law. He deemed the certified question "[v]ery" important to his agreeing to enter the guilty plea. In exchange for his guilty plea, the parties agreed to a ten-year sentence, with the trial court to determine how much time, up to eleven months and twenty-nine days, he would serve in jail. The trial court ordered that he serve 75% of that time in jail, and the Petitioner testified that he had already served that time and was currently serving the remainder of his sentence on Community Corrections.

The Petitioner said that he relied on Counsel's advice about what the certified question should be. The two discussed it, but, ultimately, the wording of the question was Counsel's decision. The Petitioner testified that, after he entered his guilty plea and Counsel had filed his notice of appeal, Counsel changed positions and gave the case to Lee Sparks to represent the Petitioner for the appeal. Mr. Sparks argued the case before the Court of Criminal Appeals.

The Petitioner said that his guilty plea was dependent on his appeal being heard

and decided by the Court of Criminal Appeals. He did not anticipate that his appeal would be dismissed. When he learned that it had, he was angry and disappointed. He appealed the Court of Criminal Appeals's decision to the Tennessee Supreme Court, which denied him permission to appeal.

The Petitioner said that, after he learned of the supreme court's denial, he filed a pro se petition for post-conviction relief. He then retained post-conviction counsel, who amended his petition for post-conviction relief. The Petitioner said he was seeking to have his judgments set aside so that he could have his day in court and give him the opportunity to clarify the certified questions of law.

During cross-examination, the Petitioner agreed that the trial judge explained to him that he was waiving all of his rights to appeal other than the certified questions. He informed the judge that he had spoken with Counsel about all of the documents and that he was "[v]ery satisfied" with Counsel's representation.

Mr. Sparks testified that he was not involved in the case until after the notice of appeal had been filed. He said that he received the case as a result of Counsel's career change, and Mr. Sparks drafted the appellate brief. Mr. Sparks testified that, during oral argument, he contended that the issue was whether the Petitioner was seized by law enforcement officers before he answered the door based upon the officers' authoritative knocking on the door. This court ultimately decided that issue had been waived by Counsel's failure to raise it in the trial court. He agreed that this issue was not contained in the certified question, and he believed it should have been.

After the hearing, the post-conviction court issued an order denying the Petitioner's petition for post-conviction relief and made the following findings:

> After considering all of the [P]etitioner's grounds for relief, and also after considering the testimony of the [P]etitioner and of his appellate counsel, Mr. Lee Sparks, and after considering all of the evidence in this case, the Court finds that the [P]etitioner has failed to prove the allegations in his petition by clear and convincing evidence, therefore his Petition for Post Conviction Relief will be denied.
>
> The Court finds that the advice given and the services rendered by . . . Counsel . . ., and by Appellate Counsel Lee Sparks, were certainly within the range of competence demanded of attorneys representing defendants in criminal cases. The Court also finds that [the Petitioner] has failed to show that his attorney's performance was deficient or that any alleged deficient performance by [Counsel] and/or Attorney Lee Sparks somehow prejudiced

7

[him].

Upon review of the [P]etitioner's original "Petition for Relief from Conviction of Sentence" which was filed pro se on May 19th, 2016, he alleges that his "conviction was based on use of evidence gained pursuant to an unconstitutional search and seizure." [The Petitioner] states in his petition that he "wishes to re-enter his guilty plea and properly reserve the certified questions of the law which is now before this court."

[The] Petitioner also alleges as a ground for post conviction relief, the "denial of effective assistance of counsel."

In his amended petition filed on September 23rd, 2016, he alleges that his guilty plea was entered only upon the belief that he was reserving a certified question of law regarding the suppression issues raised in his pre-trial motion to suppress. He alleges that the "proper issues were not addressed through ineffective assistance of his counsel" [Counsel] at the time of the guilty plea, and that his counsel failed to "properly certify the proper dispositive questions or issues." The [P]etitioner now seeks to set aside his guilty plea.

[The Petitioner] alleges that because his "direct appeal" was dismissed by the Court of Criminal Appeals, which included his certified questions of law, that he now claims that his guilty plea was involuntarily entered. Specifically, the [P]etitioner contends that "trial counsel's failure to properly preserve the certified questions of law rendered his guilty plea involuntary."

After review of the transcript of evidence of the guilty plea hearing held before this Court on May 19th, 2014, (Exhibit #3), and after review of all the other evidence in this case, including exhibits #1 and #2 and the entire court record, the Court finds that the [Petitioner] did freely, voluntarily, knowingly and intelligently enter his guilty plea on all counts, and that the defendant testified that he was "very satisfied" with [Counsel's] representation and advice at the time of the guilty plea. [The Petitioner] also testified that no force or pressure had been applied to him to cause him to ple[a]d guilty and that he did admit under oath that he was in fact guilty of each of the drug offenses for which he was pleading.

According to the guilty plea transcript, this Court also advised [the Petitioner] that once his guilty plea was accepted that he could not

withdraw it for any reason. The [Petitioner] testified that he understood that and still wished to go forward with his guilty plea.

At his post conviction hearing, [the Petitioner], testified that he was "very satisfied" with [Counsel's] representation (at the trial level), but that he had hoped to have a more "meaningful appeal" of the suppression issue. He said he wanted his appeal heard and ruled upon by the Court of Criminal Appeals.

Attorney Lee Sparks also testified at the post conviction hearing that he was the attorney who represented [the Petitioner] on the appeal before the Court of Criminal Appeals. Attorney Sparks drafted and filed the appellate brief and also orally argued the matter before The Court of Criminal Appeals. The Court of Criminal Appeals dismissed the appeal, but did state in its opinion that:

> "even if the investigator [Tikal Greer] had detained [the Petitioner] in a manner that exceeded constitutional limits" pursuant to the knock and talk, the court of Criminal Appeals concluded that the search warrant remained valid.

The Appeals Court also found:

> "that the search warrant was based upon the anonymous tips and the smell of marijuana, all of which were known before the officer (Investigator Greer) placed his foot inside the residence and physically seized the [Petitioner]."

The Appeals Court further stated in its opinion,

> "that the police obtained no information or evidence to secure the warrant as a result of seizing and detaining the defendant before execution of the valid search warrant."

The Appellate Court found that the legality of the initial detention did not affect the admissibility of the evidence obtained pursuant to the valid search warrant. By such language, it appears to this trial Court that the [P]etitioner was granted a "meaningful appeal" that was simply denied by the Court of Criminal Appeals, and then dismissed.

After a careful review of all the evidence in this case, this Court

finds that [the Petitioner] has failed to prove by credible evidence that his guilty plea was involuntarily entered or that he received ineffective assistance from his trial counsel. Therefore his petition is denied.

The Court finds that none of [Counsel's] or appellate counsel's actions or omissions were so serious as to fall below the objective standard of reasonableness under prevailing professional norms. The Court finds that both counsels' representation was appropriate and that each attorney provided [the Petitioner] with reasonably effective assistance. The Court further finds that the [P]etitioner has failed to show that there is a reasonable probability that, but for [Counsel's] performance, he would not have entered his guilty plea or that the appellate proceeding would have been different. The Court finds that the defendant freely, voluntarily, knowingly and intelligently entered his guilty plea because he wanted to take the State's plea bargain agreement and sentence as agreed too.

Since the [P]etitioner has failed to bear his burden of proof in this matter, his Petition will be denied.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that Counsel was ineffective for not identifying the appropriate issue as the certified question of law, an issue that was later identified by Mr. Sparks during oral argument. The Petitioner further asserts that this rendered his appeal meaningless and his guilty plea involuntarily entered. The State counters that the post-conviction court correctly ruled because this Court found on appeal that the certified question was not dispositive not because it was poorly drafted but because the evidence did not require suppression. The State further contends that the Petitioner did not prove that, but for Counsel's errors, he would have proceeded to trial. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-

conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id*. at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly

deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

This standard also applies to claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy the requirement of prejudice in a case involving a guilty plea, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he or she "would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). A petitioner's solemn declaration in open court that his plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

12

The Petitioner claims that Counsel was ineffective in his preparation of the certified questions of law. This Court has previously indicated that a post-conviction petition is the proper mechanism for challenging any purported deficiency in failing to preserve a certified question "[b]ecause the reasons a defendant pleads guilty may be varied, [and] it is not necessarily the case that the inducement to plead guilty is the ability to have a certified question considered on appeal." *State v. Sigifredo Ruiz*, No. M2000-03221-CCA-R3-CD, 2001 WL 1246397, at *4 (Tenn. Crim. App., Nashville, Oct. 17, 2001), *no Tenn. R. App. P. 11 application filed*. An attorney's failure to preserve an issue as a certified question is "not automatically the ineffective assistance of counsel" because "[a] guilty plea based upon the reasonably competent advice of counsel may not be attacked because of the possibility that the eventual outcome of an issue may have been favorable to the petitioner had he or she proceeded to trial." *Eddie Lee Lowe v. State*, No. W1999-00881-CCA-R3-PC, 2000 WL 1285333, at *7 (Tenn. Crim. App., at Jackson, Aug. 30, 2000), *perm. app. denied* (Tenn. Apr. 9, 2001). Instead, the petitioner must show by clear and convincing evidence that he would not have pled guilty absent the ability to appeal the certified question. *Id.* If a petitioner is able to demonstrate both deficiency and prejudice in counsel's failure to properly present a certified question for review, the proper remedy is to vacate the judgment of conviction and allow the petitioner to withdraw the guilty plea. *State v. Boyd*, 51 S.W.3d 206, 211 (Tenn. Crim. App. 2000).

The Petitioner alleges his counsel was deficient in failing to properly frame his legal issues as a certified question. Under Tennessee Rule of Criminal Procedure 37, the defendant who pleads guilty may nevertheless lodge an appeal if he reserves a certified question of law. Among other things, this Rule requires that the question appealed must be dispositive. Tenn. R. Crim. P. 37(b)(2)(A). A question is dispositive when the appellate court is left with two options: to affirm the judgment or to reverse the trial court and dismiss the case. *State v. Dailey*, 235 S.W.3d 131, 134 (Tenn. 2007); *State v. Robinson*, 328 S.W.3d 513, 518 n.2 (Tenn. Crim. App. 2010). Although the parties and trial court may be in agreement that a question is dispositive, the reviewing court is not bound by such an agreement, and must make an independent determination that the certified question is dispositive. *Dailey*, 235 S.W.3d at 134-35. When the record contains incriminating evidence apart from that challenged through the certified question, the appellate court must dismiss the appeal because the certified question is not dispositive. *See id.* at 135-36 (citing *State v. Walton*, 41 S.W.3d 75 (Tenn. 2001)).

In *State v. Preston*, the Tennessee Supreme Court required that in reserving a certified question, "the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated

so as to clearly identify the scope and the limits of the legal issue reserved." 759 S.W.2d 647, 650 (Tenn. 1988); *see* Tenn. R. Crim. P. 37(b)(2)(A)(ii). Regarding the scope of the certified question, the Court in *Preston* elaborated:

> For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise.

*Preston*, 759 S.W.2d at 650. These requirements regarding the framing of the question are "'explicit and unambiguous.'" *State v. Day*, 263 S.W.3d 891, 899 (Tenn. 2008) (quoting *State v. Irwin*, 962 S.W.2d 477, 479 (Tenn. 1998)); *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996). "No issue beyond the scope of the certified question will be considered." *Preston*, 759 S.W.2d at 650.

On direct appeal, this court held that the certified question was not dispositive of the case and dismissed the appeal. The court's reasoning was that law enforcement officers had a valid search warrant based upon anonymous tips and the smell of marijuana. As such, whether the Petitioner was unlawfully seized was not dispositive of the case because, even if he were, the evidence need not be suppressed because of the valid search warrant. We understand that Mr. Sparks identified another issue, namely whether the Petitioner was "seized" before the officers smelled the marijuana because of the authoritativeness of their knocking, but his identification of this issue does not render Counsel's representation ineffective.[1] As the post-conviction court found, the Petitioner received a meaningful appeal. Further, the Petitioner cannot prove that, but for Counsel's error in drafting the certified questions of law, he would not have entered a plea of guilt and gone to trial. In fact, the Petitioner sought to withdraw his guilty pleas so that he could clarify his certified questions but still plead guilty and avoid trial. We conclude that the Petitioner has not proven that Counsel's performance was deficient or that he was prejudiced. The Petitioner is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the post-conviction court's judgment.

---

[1] As a side note, the validity of the "knock and talk" procedure has been upheld by this Court. *State v. Cothran*, 115 S.W.3d 513, 521 (Tenn. Crim. App. 2003).

_____
ROBERT W. WEDEMEYER, JUDGE